Case number 15-1082 at L. Ampersand Publishing, LLC Doing business at Santa Barbara News Press Petitioner v. National Labor Relations Board Mr. Dale for the petitioner, Ms. Rajapasky for the respondent Mr. Dale for the petitioner, Ms. Rajapasky for the respondent Good morning. My name is Joshua Robert Dale. I'm here arguing on behalf of Petitioner, Ampersand Publishing, LLC Doing business at Santa Barbara News Press Primarily what this court is faced with deciding is whether the issuance of investigatory subpoenas by the newspaper Constituted a Section 8A1 violation In the Board finding that it did, it applied an impermissible per se standard For the issuance of any investigatory subpoenas that include a request for jank statements The Board's per se rule that is now adopted and applied Is contrary to both the Supreme Court's It's not contrary, but it's not mandated by both the Supreme Court's decision In NLRB v. Robbins Tire and Rubber Company Nor is it supported by this circuit's still standing decision In Retail Clerks International Association AFL-CIO v. NLRB Both of these cases stand only for the proposition That there's a possibility that requests for jank statements prior to hearing Could potentially be coercive They do not, as the Board has contended, has adopted a rule and has applied it against my client Stand for the proposition that such requests are inherently coercive Or that they have an inherent danger of witness intimidation And so what the Board asks, essentially, is that it changes this court's prior precedent And follows a holding of a limited number of circuits In order to find that a per se rule should apply Now all of this comes within the context of the newspaper Attempting to defend itself from multiple attacks On its exercise of its First Amendment rights As has been recognized by the U.S. District Court for the Central District In McDermott 2, recognized by the Ninth Circuit I'm sorry, that was McDermott 2 And recognized by this court in Ampersand 1 And so the question becomes whether or not And this will be addressed by my co-counsel in the hearing following this one in greater detail Whether or not the unconstitutional taint that this court found in Ampersand 1 That permeated all of the U.L.P.s in that case Has somehow been attenuated such that this U.L.P. And the U.L.P.s you will have Our position is we have not First, I would point out I would point out that actually within the record Within the answer itself to the charging document The Third Affirmative Defense that was presented by the newspaper And that would be at specifically 189 of the record They raised the issue of the general counsel is overstepping his constitutional authority Now there's a question of whether that's sufficient It doesn't sound like the same issue you're arguing now Well and it can certainly be read broadly So and we admit that it can be read broadly And perhaps not as narrow enough for purposes of NLRA issues In order to raise the issue But the question then is whether the extraordinary circumstances doctrine applies And as we have pointed out to this court in our briefing The extraordinary circumstances doctrine most keenly applies here In a situation where there were two circumstances First, you had repeated rejection by the board Of the First Amendment arguments that had been raised Below in the district court Again in McDermott 2 And again even in Ampersand 1 Then the second issue is After the prior board decision was vacated Pursuant to constitutional infirmity issues with the actual board There was a subsequent order issued by the board That specifically said We do not believe that any of the issues in Ampersand 1 Apply to this prior decision that we've made Finding that a ULP exists And that you didn't in that period While that was when the reconsideration petition was pending The board said you hadn't You hadn't asked the board to apply the Ampersand 1 opinion from our court Is that right? Well, and that is true With the context of it was permeating the issues throughout The ULPs you're going to hear about as well as even this ULP For example, in the motion for reconsideration While this issue wasn't specifically addressed There were discussions about issues related to the First Amendment That were being dealt with at the same time As they were dealing with the issue of this particular ULP Specifically issues having to do with discovery into the boycott The boycott out ULPs that ultimately were found in Ampersand 1 Were ultimately found similar in Ampersand 1 To impugn the First Amendment rights of the client Mr. Gordon, can you just help us out in explaining Maybe sort of putting aside the lead-up And I realize that that's not your position You wouldn't put aside the lead-up And the purpose of the unionization effort But if this case came to us as a stand-alone What is the threat to the newspaper's editorial control Of the board's determination here? Outside the context of the lead-up, there is no threat I will concede that But again, the issue here is the fact that there has been the lead-up This newspaper is not Gannett or the Tribune Company It's a small newspaper that has been fighting for 10 years To try to deal with these issues So that's really helpful In what way then does the context color this? Just spell it out a little bit more concretely How the newspaper's First Amendment prerogatives and rights Are affected by the application to it Of the board's general rule About the confidentiality of its contact with employees Well, it's affected only in the sense that it is yet another ULP That the newspaper has to defend against And one in which there is a quick rush to judgment Of an adverse finding Including a reliance on prior decisions of an ALJ That are ultimately vacated by this court in Ampersand 1 So you've been accused of asserting this First Amendment context As immunizing you against any ULP charge used in dispute with the union Doesn't that sound like what you're saying now? That we're immunized from any ULP proceedings Because of the prior unconstitutional decisions of the board Our position is that there is a limited immunization To the extent that there has been no evidence That the improper purpose for which the union was originally formed And continued to bargain with regard to editorial content issues Continued up through 2012 It continued through the period in which this ULP And the ULPs you'll hear about in 1074 were filed So to the extent there's been no establishment That the union has changed course That we would say there is in fact a limited ability to be immunized Particularly in the context of Anywhere for the proposition that the court could extend Or the board could extend Or more particularly the court could extend Such an immunity based on the unconstitutional purpose Or anti-constitutional purpose of the union Well I think it comes directly out of Ampersand 1 itself I don't remember exactly that in the language being used I am somewhat familiar with that I think I remember reading that somewhere It comes out of Ampersand 1 itself And remember these same arguments about individual ULPs Not necessarily touching upon constitutionally informed issues Was raised throughout that argument And ultimately in deciding Ampersand 1 And in preparing for this There was a brief filed on behalf of the paper There's 95 pages of which 5 were devoted And this is Ampersand 1 To the issue of the First Amendment And the other 90 were devoted to each of the individual ULPs And in Ampersand 1 this court said Well wait a second The scope of this taint The impact of the infringement upon the newspaper is so great That we're not even going to go through this analysis This case by case analysis We are going to Based on the First Amendment issue Say that the board should not be enforcing ULPs On behalf of a union that has this improper purpose So who needs to dispel the taint and how Would you envision that that would be done? Your view is that there's kind of a presumptive immunity From ULPs unless and until Fill in the blank I think there's Probably the easiest way is The union would have to be decertified and recertified Or alternatively Perhaps if the board could demonstrate That it was prosecuting these ULPs On the basis of something other than The ongoing board's Or the ongoing union's desire to control editorial content And again maybe we've reached that point already What does this one today have to do With the editorial content? Well this specific one does not You're going to hear in 1082 about how there are Well that'll be in 1082 But again remember This is a ULP That the newspaper is defending After being charged with a bunch of other ULPs And is fighting tooth and nail to defend itself Against the second onslaught Of attempts by the union To try to cede editorial control And so without getting too much into 1082 But I don't see what this particular ULP has to do With whether the union has benefited from editorial control Well It doesn't necessarily have to do Again unless you deal with it in the context And ultimately If this court were to find That the first amendment issued Maybe didn't pervade 1082 But did pervade 1074 Our position is that we still succeed Because the test that has been applied here By the board is over broad And has not been adopted by A majority of the circuits And there are compelling public policy reasons Why it shouldn't be adopted by this circuit And I see my time has expired Okay we'll give you some time on rebuttal Thank you May it please the court My name is Neelakshmi Rajapaksa I'm counsel for the National Labor Relations Board I'd like to begin by addressing The unfair labor practice The board used a standard here That it has announced since the 1960s In cases like Winn-Dixie stores And Braswell Motor Freight The board considers pre-hearing requests For affidavits to be inherently coercive And that is because Employees necessarily would feel inhibited By an employer's expression of inquisitive interest In what the employees had to say to the board It's a very sort of elementary proposition That was recognized by the Supreme Court And Robbins-Tyer as well In the context of a FOIA case In terms of the company's contention That some different standard applies The standard applied by the Fourth Circuit In other cases Even assuming that that were the standard The company wouldn't win under that standard Because even if this court Took in the circumstances Surrounding the company's request The coercion was apparent On the face of what the company did here The company served official government subpoenas On employees Two employees directly Eight employees through an agent And essentially Indicated to the employees That they had to produce their affidavits They had to appear before a judge And produce the affidavits That were given to the board During the investigation So taking in the circumstances In the board's view Doesn't eliminate The unfair labor practice here In terms of the company's argument That there's a First Amendment issue And a sort of impediment To finding the unfair labor practice In this case I'll first say The board adheres to its position That this issue is not before the court Because it wasn't properly raised In the proceedings below And the company had multiple opportunities To raise it The company could have raised it On exceptions to the board The company could have raised it In a motion for reconsideration Of the 2012 decision of the board The company could have raised it On a motion for reconsideration Of the 2015 reissued decision And so there's really no excuse For the dereliction here By the company That should warrant Considering this issue at this point If the court wanted to Look at the First Amendment issue I respectfully submit That there is nothing to see As Judge Sentell I believe has suggested somewhat In his questioning Of my opposing counsel This case Has nothing whatsoever To do with the newspaper's right To control the content of its paper That is the essence Of the First Amendment protection That we agree Belongs to the publisher of the newspaper And we certainly Appreciate the court's findings In Ampersand 1 But just to be clear Ampersand 1 was a case In which the company was reacting To employee efforts That were mainly driven By their desire to take control Over some editorial aspects Of the newspaper This case does not involve A reaction to unprotected Employee activity It involves the company's proactive Coercion of employees In regard to something That has nothing to do With the content of the newspaper The union itself Has characterized its whole effort As really motivated By this desire to push back And a desire that has been Decided by this court In Ampersand 1 To have been overreaching In violation of the paper's First Amendment rights So the whole point of being Of having a union Being part of a union Asserting rights within the union From the perspective Of these employees Was to gain more control Over what they call Journalistic ethics Then is there not any burden On the union To expunge that taint? Well I'll say two things Your honor In the first place Because this issue Was not raised before the board There isn't a record Of what the employees Ongoing activities were And whether they were Related to content control I think you'll see that In the other case There will probably be discussion Of the employees' activities But in terms of expunging taint There is no precedent For the kind of remedy The extraordinary remedy That the company is asking for And again Along the 10 E lines The company didn't ask the board To impose that Did the company ever Move to decertify the union On that ground? Could the company? Did they? No they didn't And they frankly your honor They couldn't They couldn't petition To decertify the union Based on its view That the union is illegitimate Because certifications Petitions regarding certifications Usually have to do with Gauging employee interest And being represented But the company could have Refused to bargain with the union Which it has not done To my knowledge In this record That subjects them To an unfair labor practice Proceeding in itself It does but if they believe There is really no procedure For an employer To litigate certification Or decertification Without subjecting itself To the possibility of ULP That's correct your honor That is correct But the company could have Addressed this just by Arguing in this case For this remedy The problem here Is really that It's asking a court To impose To basically add a remedy That the board Never had an opportunity To consider Which is the essence Of what the Would be your position That contrary to your Opposing counsel That's why you're in opposition And you have opposing That this is Asking us to decide A question that's been Forfeited by the Yes exactly That's precisely the point Your honor Right But they would have had to Raise it before the board Would they not have had to Amend their petition For reconsideration I'm just trying to get The timing straight Well they They filed a motion For reconsideration in 2012 But then after Noel Canning issued The board took this case Up again And then issued Another decision At that point Which was 2015 So long after Ampersand 1 issued To the extent that The court thinks That Ampersand 1 Was relevant To the employer's decisions About what to argue Ampersand 1 Had been on the books For years And so in 2015 It was really incumbent On the company To bring this up If in fact It truly believed That there is an Ongoing attack On its first amendment rights That should be considered As a part of this Very straightforward case About improper requests For affidavits Okay The court has no further questions Thank you Thank you We'll give you a minute For rebuttal Thank you Without regard To the first amendment issue I think it's important For this court To be made aware Of the circumstances Under which These particular subpoenas Were issued And how they've been characterized Such that To find that they Exhibit the level Of coerciveness That you would see In a case like For example When Dixie Or even retail clerks Disowned circuits Decision Would be unfair And particularly Inapt to this case You have a situation Where the board Is asking the court To determine That the issuance Of subpoenas themselves Which are a recognized Investigatory tool Not only in NLRB proceedings But in court proceedings In general That somehow The receipt of a subpoena Is inherently coercive And I think that's A bridge too far And the reason why Is you go back To the Robbins decision And Robbins was specifically Concerned with balancing The interests Of the ability Of investigatory Acts by the employer With the right of the board To conduct its own investigation Free of intimidation So to apply Or adopt A per se rule That holds the receipt Of a subpoena As inherently coercive Is anathema to that And with that Unless the court Has any further questions Thank you This case is submitted
judges: Kavanaugh, Pillard, Sentelle